# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CARLISLE BANQUETS INC., and NEW MERIDIAN BANQUETS INC., d/b/a MERIDIAN BANQUETS, ) ) ) ) Plaintiff, ) ) v. ) ) OWNERS INSURANCE COMPANY, ) ) Defendant. ) | Case No. 21 CV 517<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

This case involves an insurance dispute concerning Defendant Owners Insurance Company's (Owners) coverage obligations under the commercial property insurance policies it sold to Plaintiffs Carlisle Banquets Inc. and New Meridian Banquets Inc., d/b/a Meridian Banquets (the Banquet Halls). The parties dispute whether Owners has an obligation to pay for the loss in business income resulting from the business interruption caused by Governor Pritzker's executive orders issued in response to the COVID-19 pandemic. The Banquet Halls filed a complaint seeking a declaratory judgment entitling them to the benefits of the insurance coverage they purchased, for indemnification of the business losses they have sustained, for breach of contract, and for bad faith claims handling. [15] at ¶ 11. Owners moves to dismiss the Banquet Halls' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). [16]. For the reasons stated below, this Court grant Owners' Rule 12(b)(6) motion.

I.   The Amended Complaint's Allegations

The Banquet Halls own and operate restaurants in Illinois. [15] at ¶ 1. Owners sold commercial property insurance policies (the Policies) to the Banquet Halls under policy numbers 154604-07232982-20 and 154604-07295126-20, on January 15, 2020 and December 17, 2019, respectively. *Id.* at ¶ 18; [15-1] at 1; [15-2] at 1.

The Policies' coverage provisions are identical, *see* [15-1]; [15-2], and contain the following relevant provisions:

> **BUILDING AND PERSONAL PROPERTY COVERAGE FORM.**
>
> **A. COVERAGE**
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

[15-1] at 64–65; [15-2] at 66–67.

> **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM**
>
> \*\*\*
>
> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.
>
> \*\*\*
>
> **Civil Authority**
> In this Additional Coverage - Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations. When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority

2

that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

[15-1] at 78–79; [15-2] at 80–81.

**BUSINESS INCOME (AND EXTRA EXPENSE) ACTUAL LOSS SUSTAINED COVERAGE FORM.**

**A. COVERAGE**

**1. Business Income**

**b.** We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which ACTUAL LOSS SUSTAINED is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

**c.** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within the number of months shown in the Declarations after the date of direct physical loss or damage.

\*\*\*

**Civil Authority**
In this Additional Coverage - Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations. When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

> **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

[15-1] at 96–97; [15-2] at 98–99.

In March 2020, the World Health Organization declared that COVID-19 constituted a global pandemic. [15] at ¶ 30. As the COVID-19 global pandemic spread throughout the United States and the State of Illinois, Governor Pritzker issued several Executive Orders, including: 2020-07 and 2020-10 (the closure orders). *Id.* at ¶ 32. Order 2020-07 prohibited restaurants, bars, grocery stores, and food halls from permitting "on-premises consumption" from March 16, 2020 to March 30, 2020. [17] at 49. Order 2020-07 did, however, encourage continuing business operations for "off-premises" consumption through carry-out and delivery services. *Id.* Order 2020-10 extended the prohibition of on-premises consumption until April 7, 2020. *Id.* at 55.

Following the March 15, 2020 closure order, each Plaintiff submitted a claim to Owners requesting coverage for their business interruption losses; Owners, in turn, denied each claim. [15] at ¶¶ 40–41.

In their amended complaint, the Banquet Halls claim that the Policies entitle them to coverage pursuant to the business income and civil authority provisions. *Id.* at ¶¶ 18–27, 36, 89–90. The Banquet Halls seek a declaratory judgment establishing

4

their entitlement to insurance coverage for business losses, breach of contract, and bad faith claims handling under 215 Ill. Comp. Stat. 5/155. *Id.* at ¶ 11.

## II. Legal Standard

A motion to dismiss asserts that the plaintiff's complaint has failed to state a valid claim under Federal Rule of Civil Procedure 12(b)(6). *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). To survive a motion to dismiss, the pleading must contain "sufficient factual matter" to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff alleges sufficient facts for "the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Id.*

## III. Analysis

Owners moves to dismiss the Banquet Halls' first amended complaint in its entirety, arguing that neither the COVID-19 virus nor the closure orders caused "direct physical loss or damage," and thus, that the Policies do not provide for business income coverage. [17] at 11–16. Owners also contends that, for similar reasons, the Banquet Halls cannot claim coverage under the civil authority provision of the Policies. *Id.* at 16–18. Owners further argues that the existence of a bona fide coverage dispute forecloses the Banquet Halls' bad faith claim. *Id.* at 21. This Court addresses each argument in order below, bearing in mind that Illinois law requires it to construe the policy as a whole and give effect to the intentions of the contracting parties. *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 778 (7th Cir. 2015). "If the

5

policy language is unambiguous, courts apply it as written." *Cont'l W. Ins. Co. v. Country Mut. Ins. Co.*, No. 20-2962, 3 F.4th 308, 315 (7th Cir. 2021) (quoting *Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011)).

### A.  Business Income Coverage

This Court first analyzes Owners' argument that it owes no business income coverage under the Policies due to the absence of physical loss or damage. As set forth above, the Policies require Owners to pay only for business income loss the Banquet Halls sustain due to a necessary "suspension" of "operations" during a "period of restoration"; the "suspension" must be "caused by direct physical loss of or damage to the property." [15-1] at 78, 96; [15-2] at 80, 98.

Here, the Banquet Halls do not allege that their properties sustained any demonstrable, physical damage. *See generally* [15]. Instead, the Banquet Halls allege that the Policies do not require physical damage and that the Policies guarantee coverage for the mere loss of access to and loss of the ability to use the property for its intended purpose. [15] at ¶¶ 43, 46, 52–54, 61. Specifically, they allege that "Prohibiting or limiting the physical presence on the premises of any or all persons (except for those facilitating minimal maintenance or takeout and delivery services) and the prohibition or limitation of the physical use of equipment, fixtures, and furniture constitutes a physical loss that caused the suspension of business operations." *Id.* at ¶ 48. This argument fails, however, under binding precedent and the weight of persuasive authority.

6

In *Sandy Point Dental, P.C. v. Cincinnati Insurance Co.*, 20 F.4th 327 (7th Cir. 2021), the Seventh Circuit resolved the central question involved in this case: "whether the loss of use, unaccompanied by any physical alteration to property, may constitute 'direct physical loss'" under policy language identical to that at issue here. *Id.* at 330. Relying upon *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481 (Ill. 2001), the court held that "direct physical loss" requires "a physical alteration to property." *Sandy Point Dental*, 20 F.4th at 333. The Banquet Halls, like Sandy Point Dental, failed to explain "how either the presence of the virus or the resulting closure orders physically altered its property." *Id.* at 335. The loss of the property's "intended use" "is not enough." *Id.* Not being able to use the property for its "preferred" and likely "most lucrative" use "is a far cry from the complete physical dispossession of property." *Id.* In *Sandy Point*, the court acknowledged that alternative uses of the property "would not have been equally, or even nearly, as satisfying to Sandy Point. But Sandy Point insured its property, not its ideal use of that property. Having alleged neither a physical alteration to the property nor its equivalent in its amended complaint, Sandy Point failed adequately to allege a 'directed physical loss' under the Policy." *Id.* at 335. So too here.

This interpretation of "direct physical loss" comports with pre-COVID precedent holding that "direct physical loss" refers to "property that has been damaged" and that the word "direct" excludes situations where intervening forces play a role in the damage. *E.g., Windridge of Naperville Condo. Ass'n v. Phila. Indem. Ins. Co.,* 932 F.3d 1035, 1040 (7th Cir. 2019). And, since the COVID-19 pandemic has

spread across the country, courts confronting policy language identical or substantially similar to the language here have denied coverage claims based upon Governor Pritzker's closure orders. *See L&J Mattson's Co. v. Cincinnati Ins. Co., Inc.*, No. 20 C 7784, 2021 WL 1688153, at *5 (N.D. Ill. Apr. 29, 2021); *Zajas, Inc. v. Badger Mut. Ins. Co.*, No. 20-CV-1055-DWD, 2021 WL 1102403, at *3 (S.D. Ill. Mar. 23, 2021); *Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*, No. 20 C 3463, 2021 WL 633356, at *3 (N.D. Ill. Feb. 18, 2021); *see also Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, No. 20 C 4249, 2020 WL 7889047, at *4 (N.D. Ill. Dec. 22, 2020); *T & E Chi. LLC v. Cincinnati Ins. Co.*, 501 F. Supp. 3d 647, 652 (N.D. Ill. 2020). As these courts have emphasized, "direct physical loss or damage" requires "either a permanent disposition of the property due to a *physical* change ('loss'), or *physical* injury to the property requiring repair ('damage')," *Crescent Plaza*, 2021 WL 633356, at *3, and therefore these policies provide coverage only for losses "tied to physical loss or damage to property and not losses incurred to protect the public from disease," *T&E Chi.*, 501 F. Supp. 3d at 651.

Based upon the above binding precedent and persuasive authority, "physical loss or damage" requires an actual permanent disposition to property brought by some demonstrable physical harm; mere loss of use due to the pandemic does not meet the physicality requirement. Because the Banquet Halls do not allege such tangible, concrete harm to their physical properties, this Court dismisses their claims for coverage to the extent based upon the business income provisions of the Policies.

### B. Civil Authority Coverage

The Banquet Halls' claim for coverage under the civil authority provisions of the Policies similarly fails. The Policies provide for civil authority coverage as follows:

> **Civil Authority**
> In this Additional Coverage - Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations. When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

[15-1] at 78–79, 96–96; [15-2] at 80–81, 98–99.

Under this policy language, civil authority coverage applies only if there exists a covered cause of loss that prohibits access to the Banquet Halls' premises. Moreover, to trigger coverage, the Banquet Halls must show that (1) there existed damage to another property within one mile of their properties; and (2) "dangerous physical conditions" caused the civil authority order. The Banquet Halls cannot meet these requirements.

For one, the Banquet Halls do not plausibly allege that a property "other than" theirs, within one mile, sustained any damage. They allege, in conclusory fashion, that "access to the area immediately surrounding the damaged property has been

9

prohibited by civil authority as a result of the damage." [15] at 62. But as discussed, COVID-19 itself "does not constitute *damage* to property." *L&J Mattson's Co.*, 2021 WL 1688153, at *7.

Nor do the Banquet Halls plausibly allege that Governor Pritzker enacted the closure orders due to dangerous physical conditions; indeed, the "purpose" of the orders "was to prevent human beings from congregating and spreading the virus from one to another, not to protect people from dangerous property damage." *Id.*; *see also AFM Mattress Co., LLC v. Motorists Com. Mut. Ins. Co.*, 503 F. Supp. 3d 602, 607 (N.D. Ill. 2020) (noting that "governments issued shutdown orders in response to the virus" itself).

Further, although the closure orders limited the Banquet Halls' operations (by restricting on-premises dining), neither prohibited access to their property because they allowed restaurants to prepare food for delivery, drive-through, and curbside pick-up. *See In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, No. 20 C 02005, 2021 WL 679109, at *10 (N.D. Ill. Feb. 22, 2021) (rejecting a claim for civil authority coverage under similar language because "there is no allegation that employees are outright prohibited from accessing the premises," and that for some insureds, "take-out customers and in-room dining guests may access the premises (and the immediately surrounding areas)"), *motion to certify appeal denied*, No. 20 C 02005, 2021 WL 2433666 (N.D. Ill. June 15, 2021); *cf. Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 694 (N.D. Ill. 2020) (holding that civil authority coverage did not apply because the closure orders deemed the insured

10

dental office an essential business), *reconsideration denied*, No. 20 CV 2160, 2021 WL 83758 (N.D. Ill. Jan. 10, 2021).

For the reasons stated above, the Banquet Halls have not plausibly alleged coverage under the civil authority provision. This Court therefore also dismisses their claims to the extent based upon that provision.

### C. Bad Faith Denial of Insurance

The Banquet Halls additionally claim that Owners acted in bad faith by denying coverage without first conducting reasonable investigations based on all available information and by failing to provide reasonable and accurate explanations for the denials, rendering it liable under 215 Ill. Comp. Stat. Ann. 5/155. [15] at ¶¶ 95–98. Section 155 allows courts to "allow as part of . . . taxable costs" reasonable attorneys' fees, plus a penalty, if they find an insurance company took an action or delay that was "vexatious and unreasonable." 215 Ill. Comp. Stat. Ann. 5/155.

In light of the findings above, however, the Banquet Halls' bad faith claim fails because it "is neither vexatious nor unreasonable to litigate a bona fide dispute concerning the scope and application of insurance coverage, let alone to deny coverage based on a position that prevails." *PQ Corp. v. Lexington Ins. Co.*, 860 F.3d 1026, 1038 (7th Cir. 2017) (quotations omitted); *see Ill. State Bar Ass'n Mut. Ins. Co. v. Cavenagh*, 983 N.E.2d 468, 479 (Ill. App. Ct. 2012) (holding that the lower court "properly dismissed" a Section 155 claim where the policy did not provide coverage). *See also Sandy Point Dental*, 20 F.4th at 337 ("Cincinnati could not have been fraudulent or vexatious in denying coverage where adequate grounds for coverage did

11

not exist in the first place."). Because Owners has prevailed on the Banquet Halls' coverage claims, this Court also dismisses the Banquet Halls' bad faith claim.

### IV. Conclusion

For the reasons explained above, this Court grants Owners' motion to dismiss [16] and dismisses the Banquet Halls' amended complaint [15] with prejudice. The Clerk is directed to enter a judgment of dismissal. All pending dates and deadlines are stricken. Civil case terminated.

Dated: March 15, 2022                                Entered:

                                                                                   John Robert Blakey
                                                                                   United States District Judge